<u>**NOT FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| MARSHALL ROUNTREE, | |
| Petitioner, | |
| v. | Civil No. 07-5763 (RMB) |
| KAREN BALICKI, Administrator of South Woods State Prison, et al., | **OPINION** |
| Defendants. | |

Appearances:

Joshua C. Gillette
Arseneault Whipple Farmer Fassett & Azzarello LLP
560 Main Street
Chatham, NJ 07928
    Attorney for Petitioner

Laurie A. Corson
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ 09102
    Attorney for Respondents

**BUMB**, United States District Judge:

This matter comes before the Court upon a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as well as a motion for the appointment of counsel, by Marshall Rountree[1] (the "Petitioner"), an inmate at the South Woods State Prison in

---

    [1] Some court documents refer to Mr. Rountree as "Mark Hawkins."

1

Bridgeton, New Jersey.  Petitioner is currently serving concurrent sentences for armed robbery and hindering apprehension, that are running consecutively with two other concurrent sentences for aggravated assault and unlawful weapons possession.[2]  He is in the custody of the respondents: Karen Balicki, administrator of the prison; George W. Hayman, commissioner of the state Department of Corrections; and Anne Milgram, state attorney general (the "Respondents").  After exhausting appeals in state court, Petitioner seeks habeas relief for ineffective assistance of counsel and constitutionally deficient sentencing.  Because the state court determinations on these matters were not contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, the Court denies the petition.  Also, because no prejudice will result if counsel is not appointed, the Court denies Petitioner's motion for appointment of counsel.

**I. Statement of Facts**

---

[2] This habeas petition concerns only the sentences for armed robbery and hindering prosecution.  (Pet. Hab. Br. at 15-16.) However, since the primary claim is for ineffective assistance of counsel based on the failure of Petitioner's attorney to seek consolidation of the two sets of proceedings, the four convictions are inexorably intertwined.

On July 15, 1993, in the course of an escalating group-altercation in Essex County, New Jersey, Petitioner drew a revolver and shot his disputant, rendering him a paraplegic.  Two weeks later, Petitioner, who had not yet been apprehended for the shooting, approached a woman on the street in Camden County, New Jersey, and, displaying a gun, demanded that she surrender her purse.  She complied.  She thereafter notified the police, who in turn located and arrested Petitioner.  Petitioner told police that the gun he had displayed during the robbery was fake, but police never recovered it.

Prosecutors in Essex and Camden Counties secured separate indictments and pursued independent prosecutions for the crimes committed in their respective jurisdictions.  Petitioner's court-appointed attorney never sought to consolidate the proceedings. In Camden County, Petitioner initially agreed to plead guilty to first-degree robbery, a Graves Act offense, as well as third-degree hindering prosecution, in exchange for a state-recommended sentence of incarceration for nine years with three years of parole ineligibility, to run concurrent with Petitioner's Essex County sentence.  Petitioner had previously rejected an alternative offer of a 12-year non-Graves Act sentence.

After entering the agreed upon plea but before being sentenced in Camden County, Petitioner pled guilty in Essex County to second-degree aggravated assault and second-degree

possession of a weapon for an unlawful purpose, both Graves Act offenses.[3]  Consistent with the plea agreement, the Essex County court sentenced Petitioner to two concurrent ten-year sentences, during the first half of which he would be ineligible for parole.

When Petitioner returned to Camden County for the robbery sentencing, he allocuted to having used a real gun in the robbery, because, he now asserts, his attorney advised him that doing so was a requirement of the plea bargain.  The Camden court then rejected the plea agreement for two reasons: first, even if the gun Petitioner had used in the robbery had been fake, the sentence was too lenient for first-degree robbery; and if the gun was real, it would be an illegal sentence as a second Graves Act conviction.

Petitioner then withdrew his guilty plea and the case was set for trial.  The day that the trial was to begin, the prosecutor offered to recommend a twenty-year sentence with a seven-year term of parole ineligibility, to run concurrently with Petitioner's Essex County sentence, in exchange for a guilty plea.  Petitioner rejected the offer, explaining to the Court that at least part of the reason for his opposition to the offer

---

[3] Petitioner was first tried and convicted by a jury for these two offenses, plus first-degree attempted murder; but with the State's consent, the trial judge granted Petitioner's motion for a new trial based on errors in the jury charge.  Rather than retry the case, Petitioner pled guilty to the two lesser offenses.

was that he believed the time he had already served in prison
would not count toward his sentence.[4]  The trial proceeded, and
the jury returned a guilty verdict on both counts.[5]  The court
imposed the mandatory 50-year extended-term sentence, with parole
eligibility at 16-years and eight-months, to run consecutively
with his 10-year Essex County sentence.  Petitioner's total term
of incarceration for both sentences is therefore 60 years, with
parole eligibility after 21 years and eight months.

Petitioner appealed both of his convictions, and those
appeals were heard and denied.  A petition for certification was
also denied by the Supreme Court of New Jersey.  Petitioner then
filed petitions for post-conviction relief, which were heard and
denied without an evidentiary hearing.  He appealed the denial of
post-conviction relief, and in an opinion dated September 21,
2006, the Appellate Division affirmed.  The Appellate Division
denied a motion to reconsider and the Supreme Court of New Jersey
denied certification.  Petitioner then filed this petition for a

---

[4] The transcript is unclear as to who, if anyone, told
Petitioner that he would not receive time-served credit and how
much this factor weighed in his decision to reject the
prosecutor's offer.  Nonetheless, the trial court responded by
telling Petitioner that the time he had already served would be
credited to his Essex County sentence, not his Camden County
sentence.  Actually, Petitioner did receive 2.9 years of jail-
time credit toward his Camden County sentence.  (Pet. Hab. Br. at
32-36.)

[5] Petitioner was removed from the courtroom for the pendency
of his trial for repeatedly interrupting the proceedings.

writ of habeas corpus, which challenges only the Camden sentence.

## II. Legal Standard

Petitioner brings a petition for a writ of habeas corpus pursuant to Section 2254(a) of Title 28 of the United States Code.  This section gives the Court jurisdiction to entertain a habeas petition challenging a state conviction or sentence where the inmate's custody violates federal law.  28 U.S.C. § 2254(a). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  Nor may the court recharacterize a ground

6

asserted under state law into a federal constitutional claim. Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim involved an unreasonable application of clearly established Federal law, was contrary to clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

> An application for a writ of habeas corpus ... shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving

7

the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (internal citations omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005).  As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  Accordingly, this Court may not grant habeas relief to petitioner unless the adjudication of a federal claim by the New Jersey courts was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412; see also Carey v. Musladin, 127 S. Ct. 649, 653 (2006) ("[F]ederal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an

unreasonable application of this Court's applicable holdings."). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the " 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  For example, in Carey v. Musladin, the Court reversed the granting of a writ, holding that where "[n]o holding of this Court required the California Court of Appeal to apply the test of Williams and Flynn to the spectators' conduct . . . , the state court's decision was not contrary to or an unreasonable application of clearly established federal law." Carey, 127 S. Ct. at 654.  In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.  Id. at

409-10; see also Thomas v. Varner, 428 F.3d 491, 497 (3d Cir.
2005).  Thus, "[t]he federal habeas court should not grant the
petition unless the state court decision, evaluated objectively
and on the merits, resulted in an outcome that cannot reasonably
be justified under existing Supreme Court precedent." Outten v.
Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (internal citations
omitted).

## III. Discussion

### A. Ineffective Assistance of Counsel

Petitioner's chief argument is that his attorney's various
errors were so serious that they effectively deprived him of the
right to counsel.  The two-part test announced in Strickland v.
Washington, 466 U.S. 668, 687 (1984), governs claims of
ineffective assistance of counsel raised on habeas review.  Bell
v. Cone, 535 U.S. 685, 698 (2002).  To demonstrate ineffective
assistance of counsel, Strickland requires that the petitioner
show: first, that his attorney's performance was so egregiously
deficient that he was not functioning as the "counsel"
contemplated by the Sixth Amendment; and second, that the
deficient performance resulted in prejudice that deprived the
defendant of a fair, reliable proceeding.  466 U.S. at 687.

Strickland sets a high bar.  A habeas petitioner must
establish not just that his counsel made poor decisions, but that
the deficient representation caused a breakdown in the

adversarial process.  Id.  The Supreme Court has said that "judicial scrutiny of a counsel's performance must be highly deferential and that every effort must be made to eliminate the distorting effects of hindsight . . . ."  Bell v. Cone, 535 U.S. 685, 698 (2002) (internal citations omitted).

AEDPA, which controls this Court's review in habeas cases, provides that for a habeas petitioner to succeed, "he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  Rather, he must show that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-99.

### 1. Failure to Consolidate

Petitioner argued in state court that his attorney's failure to seek consolidation of the prosecutions in Camden and Essex Counties amounted to ineffective assistance of counsel under Strickland.  Appropriately applying the two-part Strickland test,[6] the New Jersey Appellate Division concluded that the

---

[6] Petitioner argues that the state court's conclusion was "contrary to" established Supreme Court law, because the state court formulated the prejudice test in terms of whether the attorney's deficient performance "likely" would have made a difference, rather than whether it was "reasonably probable" that it would have made a difference.  (Pet. Hab. Br. at 29.)  A

11

attorney's failure to consolidate the proceedings was deficient under the first prong,[7] but that Petitioner could not establish, as required by the second prong, that the deficient performance resulted in prejudice depriving him of a fair proceeding.  The state court based its conclusion on the fact that Petitioner had rejected the prosecutor's offer of a twenty-year sentence with a seven-year term of parole ineligibility, and it was not reasonably probable that consolidation would have resulted in a more lenient sentence than the one offered.

The state court's application of Strickland was not objectively unreasonable.  A habeas petitioner "demonstrates prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Williams v. Taylor, 529 U.S. 362, 413-14 (2000).  Thus, to prevail on the matter of prejudice, Petitioner would have had to establish a reasonable

_____

federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  The Court finds no meaningful distinction between a determination of whether something is "likely" or "reasonably probable," and therefore does not think that the New Jersey court applied a rule different from that articulated in Strickland.

[7] The parties disagree on whether the state court properly applied Strickland when it held that an attorney's failure to seek consolidation constitutes deficient performance.  The Court declines to reach this question, as its inquiry is limited to whether that application of Strickland is objectively unreasonable, which it clearly is not.

probability that, but for his attorney's failure to request
consolidation, his sentence would have been shorter than the
twenty-years he was offered in spite of his attorney's deficient
performance.  See id.  The state court reasonably concluded that
Petitioner did not satisfy this burden.

Petitioner assumes that because his attorney's failure to
seek consolidation preceded his rejection of the twenty-year
offer, it follows that there was a causal relationship between
the two events.  The state court should therefore not have
determined prejudice by comparing the reasonably probable outcome
of consolidation with the plea offer, because, Petitioner's
argument goes, the failure to seek consolidation caused
Petitioner to reject the twenty-year offer.

This argument lacks merit.  The burden lies with Petitioner
to establish a reasonable probability that he would have accepted
the twenty-year offer had his attorney sought consolidation of
the proceedings.  See Requena v. Roberts, 278 Fed. Appx. 842,
845-46 (10th Cir. 2008) ("[T]o satisfy the prejudice prong of the
analysis, [the petitioner] must show a reasonable probability
that, but for counsel's errors, he would have accepted the
State's plea bargain offer." (quoting the state court)).  This he
did not establish.[8]  The record demonstrates that Petitioner

---

[8] Petitioner's brief confuses his two distinct arguments for
ineffective assistance of counsel.  He argues that he declined
the twenty-year offer because of his attorney's deficient
performance.  But he obviously did not decline the offer because

13

gambled when he chose to proceed to trial rather than accept the twenty-year offer.  He now disclaims responsibility for that decision by attributing it to his attorney's unrelated failure to seek consolidation of the Camden and Essex prosecutions.  It is not unreasonable to determine prejudice by comparing the reasonably probable sentence that would have resulted had Petitioner's attorney not erred, to the sentence actually offered to Petitioner in spite of his attorney's error.  See U.S. v. Mendoza-Prado, 285 Fed. Appx. 347, 348-49 (9th Cir. 2008) (declining to find prejudice where, absent the attorney's deficient performance, the outcome would have been no better than a rejected plea).

Finally, Petitioner argues that the state court wrongly concluded that consolidation would not have resulted in a more lenient sentence than the twenty-year offer he rejected.

_____

his attorney failed to seek consolidation; the two events were unrelated.  (If Petitioner were correct that the failure to seek consolidation produced a chain of events causing the plea offer rejection, then the same is true for all of Petitioner's decisions following the failure to consolidate.  The Court is unwilling to accept this "chain of events" theory of causation.) Petitioner's brief later argues that he declined the plea offer because his attorney advised him that the time he had already served would not count toward the sentence.  See infra Part III.A.2.  This account is actually plausible, but the state court determined that Petitioner could not demonstrate that the plea advice constituted deficient performance.  In other words, Petitioner has alleged two distinct instances of ineffective assistance -- failure to consolidate and poor plea advice -- but the state court reasonably determined that Petitioner demonstrated neither that prejudice resulted from the failure to consolidate, nor that the plea advice constitutes deficient performance.

Although "reasonable minds [could] differ" on this backward-looking matter of fact, <u>Hameen v. Delaware</u>, 212 F.3d 226, 252 (3d Cir. 2000) (McKee, J., concurring), the Court finds that the state court's determination was not contrary to or an unreasonable application of established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court.  At the stage when consolidation should have occurred, Petitioner was facing charges for the four offenses of which he was convicted, plus an attempted murder charge (which was dropped as part of his Essex County plea deal).[9]  The state court reasonably concluded that Petitioner did not meet his burden of establishing a reasonable probability that he would successfully have bargained for a more lenient sentence than twenty-years with seven-years of parole ineligibility for these five charges.[10]  The state court therefore did not unreasonably apply <u>Strickland</u> when it determined that Petitioner was not prejudiced by his attorney's failure to consolidate.

---

[9] Since the twenty-year offered Camden sentence was to run concurrently with the shorter Essex sentence, the state court properly measured the twenty-year offer against the likely outcome of consolidation as to all five charged offenses.

[10] Notably, the state court quoted the Camden County prosecutor, who, exasperated, told the trial judge that he had "bent over backwards" to accommodate Petitioner.  "I don't [k]now what else can be done for the defendant," he said.  906 A.2d at 1137-38.

## 2. Advice of Counsel Regarding Plea Offer

Petitioner next argues that he suffered from ineffective assistance of counsel, because he rejected the twenty-year plea offer based on his attorney's advice -- confirmed by the trial judge's statements -- that he would not receive credit for the jail time he had already served.[11]  The state court rejected this argument, holding that Petitioner's "bald assertions" that he otherwise would have accepted the plea was not enough to satisfy his burden of establishing either deficient performance by his attorney or resulting prejudice.  906 A.2d at 1139.

The state court reasonably rejected Petitioner's argument. At an April 2, 1996 hearing, Petitioner explained that at least one reason for his decision to reject the twenty-year plea offer was, "[T]hey tell me that . . . since December of 1994 till now . . . that all that time is not counting [toward the sentence]. The time I've been in prison is basically dead time."  The trial judge corrected Petitioner, "It's not dead time.  It counts on the sentence that you're serving, sir.  It just doesn't count on the sentence that you might get in this case if you're convicted."  Thereafter, Petitioner confirmed that he had "no interest" in accepting the offer.  (Pet. Hab. Br. at 33-34.)

First, Petitioner's claim that his attorney advised him incorrectly is, as the state court held, a "bald assertion."  906

---

[11] This argument differs importantly from the preceding ineffective assistance claim.  See, supra, note 8.

16

A.2d at 1139.  It is not at all clear from the transcript who told Petitioner that the jail time he had served would not count toward his sentence.  Second, while the plea offer was still available, the trial judge corrected Petitioner's misconception: the jail time he had served was not "dead time" and would count toward his sentence.  Noting that Petitioner did ultimately receive credit toward his Camden sentence, however, Petitioner argues that the trial judge misinformed him as to which sentence would receive credit for his time served.  Assuming, arguendo, that Petitioner is correct, the judge's error was harmless.

Furthermore, even if the Court were to find that Petitioner's misconception was the product of incorrect advice from his attorney, or that his attorney failed to correct the judge's misstatement in private conversations with him (a proposition for which there is no evidence), the Court has no reason to believe that this factor dispositively caused Petitioner to reject the twenty-year plea offer.  In fact, the record contains evidence suggesting otherwise.  First, Petitioner indicated categorically that he had "no interest" in accepting the offer, which is a far cry from expressing a desire to accept the offer but for this one detail.  Second, the record suggests that the prosecutor wanted Petitioner to accept the offer and had done everything possible to secure a plea agreement.  See 906 A.2d at 1137-38.  If Petitioner's rejection of the offer had been premised solely upon a misconception that Petitioner had

17

announced in open court, the prosecutor surely would have corrected the misconception in private plea negotiations in hopes of avoiding a trial.  One may thus reasonably infer from the record that other factors contributed to Petitioner's decision to reject the plea offer and Petitioner was not prejudiced by this one misconception.  Third, Petitioner rejected the plea offer and proceeded to trial presumably because he believed he could fare better at trial.  Like every defendant who rejects a plea offer in favor of a jury trial, he took a calculated risk.  Petitioner provides no support for his assertion that the detail of his time-served credit would have altered his risk calculation. Thus, there exists ample reasonable basis to support the state court's conclusion that Petitioner did not establish prejudice, as he would likely have rejected the plea offer regardless of his attorney's alleged deficient performance.

Petitioner's brief requests leave to conduct discovery pursuant to Rule 6 of the Rules Governing § 2254 Cases to obtain more evidence in support of his position that he was prejudiced by deficient advice from his attorney regarding the plea offer. (Pet. Hab. Br. at 40-41.)  The Court granted a motion by Respondents to strike this portion of Petitioner's brief, on the grounds that it would be more conducive to an orderly disposition of the case if Petitioner made this request through a formal motion [Docket No. 17].  Petitioner has not made any such formal motion.  However, had Petitioner so moved, the Court would have

denied the motion for lack of good cause.  Because there clearly exists a reasonable basis for the state court's decision on this matter, no amount of discovery would alter this Court's determination.[12]

### 3. Other Allegations of Ineffective Assistance

Petitioner perfunctorily alleges a number of other instances of ineffective assistance of counsel.  The Court declines to grant habeas relief on each of these allegations.

First, Petitioner alleges that his trial counsel's failure to object to the judge's answers to two jury questions constituted deficient performance that resulted in prejudice.  At trial, Petitioner argued that a taped confession had been the product of police coercion.  The first jury question asked when law enforcement officers normally begin recording interviews. The judge responded,

> There is no rule or requirement of when a tape is to be turned on.  If they [(the police)] are going to tape a statement, they turn it on when they start, and they want to start to tape that statement.  There is nothing that says in the various procedures they go through when they arrest someone, that at a given point they must have a tape and turn it on.  They turn it on whenever they are going to use it and need it.

(Pet. Hab. Br. at 52.)  The second jury question asked why Petitioner's signature on the waiver of Miranda rights form

---

[12] The Court expresses no opinion as to whether the state courts should have held an evidentiary hearing on this matter, as that question is not before the Court.

appeared to be irregular.  The judge responded,

> You may take as fact that the defendant signed the
> waiver.  That last signature he signed.  The fact that it
> may appear to have been written over something is of
> absolutely no moment and doesn't change the fact that he
> signed that waiver.

(Pet. Hab. Br. at 52.)  Petitioner argues that the instructions

were prejudicial because they may have had the effect of

bolstering the credibility of police officers by endorsing their

conduct.  The state court reasonably concluded, however, that the

judge's answers did not have this prejudicial effect.  Petitioner

offers by way of authority only one factually distinguishable

Third Circuit case, <u>Carpenter v. Vaughn</u>, 296 F.3d 138, 157-58 (3d

Cir. 2002), which does not cast any doubt on the objective

reasonableness of the state court's application of Supreme Court

law in this case.

Second, Petitioner makes passing mention of five other

alleged instances of ineffective assistance of counsel,[13] but

offers no authority or analysis in support of his claim that

habeas relief is warranted.  The Court finds no such authority

either.  The state court's determinations on these matters were

not contrary to, or an unreasonable application of, clearly

---

[13] Petitioner alleges that his trial counsel failed to: (1)
move <u>in limine</u> to exclude evidence of other crimes; (2) object to
the entry into evidence of the rights card, or move for a
mistrial once the error was discovered; (3) adequately consult
with the Petitioner; (4) question police officer witnesses
regarding tactics used to obtain the confession; and (5) obtain
preferable clothing for Petitioner to wear at trial.

established Supreme Court law.

### B. Constitutionally Deficient Sentencing:  Retroactivity of the Apprendi-Blakely Rule

Petitioner argues that his sentence was constitutionally deficient, because it was based upon a judicial finding by a preponderance of the evidence that Petitioner used a real gun to commit his crime.  Under the Sixth Amendment, such judicial findings cannot form the basis of a sentence pursuant to a rule announced by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296, (2004). Apprendi, for the first time, held that, under the Sixth Amendment, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 489. Blakely clarified Apprendi, holding that a judge-imposed sentence in the context of a jury trial that increases the penalty beyond the statutory maximum must be based upon facts found by the jury beyond a reasonable doubt.  542 U.S. at 303-04.

On habeas review, new rules of criminal procedure cannot be applied retroactively to judgments that are already final, unless the new rule protects private individual conduct or is a watershed rule that is "implicit in the concept of ordered liberty."  Teague v. Lane, 489 U.S. 288 (1989).  The Supreme Court has set out a three-step inquiry to determine if a rule may be the basis for habeas relief under Teague:

21

> First, the date on which the [petitioner's] conviction
> became final is determined.  Next, the habeas court
> considers whether a state court considering the
> [petitioner's] claim at the time his conviction became
> final would have felt compelled by existing precedent to
> conclude that the rule he seeks was required by the
> Constitution. If not, then the rule is new. If the rule
> is determined to be new, the final step in the Teague
> analysis requires the court to determine whether the rule
> nonetheless falls within one of the two narrow exceptions
> to the Teague doctrine.

O'Dell v. Netherland, 521 U.S. 151, 156-57 (1997) (internal

citations omitted).  Here, Petitioner's conviction became final

on December 23, 1999.  Since the Supreme Court's decision in

Apprendi was not decided until June 26, 2000 -- six months later

-- the Apprendi rule is new.  Thus, it will be applied

retroactively only if it falls within one of the two "narrow

exceptions."  Id.  The first exception, applicable to rules

protecting private individual conduct, is not relevant here.

"The second, even more circumscribed, exception permits

retroactive application of watershed rules of criminal procedure

implicating the fundamental fairness and accuracy of the criminal

proceeding. . . . [T]his second exception . . . is clearly meant

to apply only to a small core of rules requiring observance of

those procedures that . . . are implicit in the concept of

ordered liberty."  Id. (internal citations omitted).

Petitioner argues that the Apprendi-Blakely rule is such a

watershed rule, citing supporting persuasive authorities (and

Petitioner's own policy arguments).  See Smart v. State, 146 P.3d

15 (Ak. Ct. App. 2006); <u>U.S. v. Okai</u>, slip op., Cr. No. 05-0019, 2005 WL 2042301 (D. Neb. Aug. 22, 2005).  The Supreme Court and the Third Circuit have suggested that the <u>Apprendi</u>-<u>Blakely</u> rule is not retroactive, <u>see</u> <u>United States v. Booker</u>, 543 U.S. 220, 268 (2005); <u>Lloyd v. U.S.</u>, 407 F.3d 608, 615-16 (3d Cir. 2005), <u>cert.</u> <u>denied</u> 546 U.S. 916 (2005); <u>United States v. Swinton</u>, 333 F.3d 481 (3d Cir. 2003), <u>cert.</u> <u>denied</u>, 540 U.S. 977 (2003), and this Court has so held repeatedly, <u>see, e.g.</u>, <u>Colvin v. Powers</u>, slip op., Civ. No. 07-2615, 2008 WL 2397332, *13 (D.N.J. June 12, 2008); <u>Murphy v. DeRosa</u>, slip op., Civ. No. 03-5887, 2005 WL 2475704, *5 (D.N.J. Oct. 3, 2005).  The overwhelming majority of circuits to address this question have agreed with this holding, <u>see, e.g.</u>, <u>Maldonado v. U.S.</u>, 344 F.3d 244 (2d Cir. 2003); <u>Goode v. U.S.</u>, 305 F.3d 378 (6th Cir. 2002); <u>Curtis v. U.S.</u>, 294 F.3d 841 (7th Cir. 2002), and the Court again applies it today.  The Court therefore declines to grant habeas relief on this basis.[14]

### C. Motion for Appointment of CJA Counsel

On August 4, 2008, nine months after filing this habeas petition, Petitioner filed a motion for the appointment, <u>nunc pro tunc</u>, of his attorney, Joshua C. Gillette, under the Criminal

---

[14]  The parties disagree on whether the <u>Apprendi</u>-<u>Blakely</u> rule, if applied retroactively, would be relevant to Petitioner's case in any event.  Since retroactivity is a threshold question, <u>O'Dell</u>, 521 U.S. at 156, the Court need not decide if the <u>Apprendi</u>-<u>Blakely</u> rule would be applicable here.

Justice Act.  [Docket No. 19.]  Petitioner had retained Mr. Gillette for representation in the 2004 state court appeal from the denial of post-conviction relief after he inherited $25,000 from his father's estate, but that sum was exhausted before this habeas petition was filed.  (Pet. Mot. Br. at 3.)

When no evidentiary hearing is required to adjudicate a habeas petition, appointment of counsel is discretionary.  See 18 U.S.C. § 3006A(a)(2)(B) (permitting the appointment of counsel whenever "the court determines that the interest of justice so require").  Appointment of CJA counsel is appropriate when a petitioner would otherwise be prejudiced, given such factors as the complexity of the issues in dispute, the merit of the petition, and the need to seek the assistance of experts.  See Clayton v. Clement, slip op., Civ. No. 06-5426, 2007 WL 1741758, *2 (D.N.J. June 14, 2007); Moore v. Cumberland County, slip op., Civ. No. 06-4516, 2006 WL 3359625, *6 (D.N.J. Nov. 16, 2006) (applying Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993)); Rivera v. Rogers, slip op., Civ. No. 05-3385, 2005 WL 2129398, *1 (D.N.J. Aug. 31, 2005).

The Court finds that the issues presented in this petition are not sufficiently complex to warrant appointment of CJA counsel.  The petition does not raise any novel legal questions, nor do the bases for relief asserted require significant legal research in addition to that which already had been completed for the state court proceedings.  See U.S. v. Redd, slip op., Cr. No.

03-0053, 2007 WL 1724900, *12 (N.D. Ind. June 11, 2007).[15]
Additionally, the Court has held that Petitioner's asserted bases
for relief are without merit and no consultation with experts is
needed to resolve the issues raised by his petition.  Thus,
because Petitioner would not have been prejudiced had no CJA
counsel been appointed at the outset of his petition, the Court
will deny this motion.

     The Court also notes the unusual timing of Petitioner's
motion.  The motion came before this Court on August 4, 2008,
nine months after this habeas petition was filed, and after
nearly all of the briefing on this petition was complete.
Bringing this motion <u>nunc pro tunc</u> near the conclusion of the
habeas litigation, after Petitioner's attorney has represented
him pro-bono for nearly a year, is unusual.  <u>Crear v. Harry</u>, slip
op., Civ. No. 05-74191, 2007 WL 2812307 (E.D. Mich. Sept. 27,
2007).  In any event, even had Petitioner filed this motion at
the time the Petition was filed, the Court would have denied the
motion for the reasons above.

_____

     [15] Petitioner's ineffective assistance arguments largely
rehash those he raised on appeal in state court.  <u>See</u> 388 N.J.
Super 190, 906 A.2d 1124 (2006).  While the Court recognizes that
Petitioner's attorney has done substantial legal research as to
the retroactive application of the <u>Apprendi</u>-<u>Blakely</u> rule, this
results from an attempt to persuade the Court to adopt a position
that is contrary to the overwhelming weight of authority.  Acting
<u>pro se</u>, Petitioner could have discovered that this Court has held
repeatedly that the rule is not retroactive.

**D. Certificate of Appealability**

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

**IV. Conclusion**

For the aforementioned reasons, the Court denies the petition for a writ of habeas corpus and the motion for the appointment of counsel.  An appropriate order will issue this date.

Dated: <u>November 18, 2008</u>                <u>s/Renée Marie Bumb</u>
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE